UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **SAGAR THAKORE ET AL** | **CASE NO. 6:23-CV-01108** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SHELTER MUTUAL INSURANCE CO** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM ORDER

Before the Court is Plaintiffs' Motion to Compel Discovery Responses (Rec. Doc. 32). Defendant, Shelter Mutual Insurance Company, opposed the motion (Rec. Doc. 36), and Plaintiffs replied (Rec. Doc. 39). The parties participated in a telephone hearing on October 2, 2024.

Plaintiffs filed suit in state court in June 2022 following an accident in which an underinsured motorist struck Sagar Thakore as a pedestrian. Plaintiffs settled with the tortfeasor and her insurer, State Farm, for policy limits. (Rec. Doc. 1-2, p. 4-8). By amended petition filed in state court, Plaintiffs asserted additional claims against Shelter for insurance bad faith damages under Louisiana's penalty statutes, La. R.S. 22:1892 and 22:1973. They allege past and future medical expenses exceeding $300,000 and that Shelter is in bad faith for failing to tender its policy limits of $250,000 and for failing to disclose the existence of a $2 million umbrella policy.

(Rec. Doc. 1-2, p. 30-37). Based on the amended petition, Shelter removed to this Court in August 2023. (Rec. Doc. 1). Following a continuance, trial is now set for May 5, 2025. (Rec. Doc. 29).

Plaintiffs filed the instant motion to compel Shelter to supplement discovery responses with information pertaining to its handling of their claim. Shelter's initial discovery responses in September 2023 contained boilerplate objections and basic information contained in the claim file (e.g. copy of the policy(ies), accident report, subpoenaed documents, etc.) (Rec. Doc. 32-3 through 32-6). Following several discussions regarding discovery issues (Rec. Doc. 32-7 through 32-11) and Plaintiffs' multiple extensions for Shelter to provide requested information, Shelter provided nearly 900 pages of additional documents, which Plaintiffs classify as a "document dump," in June 2024. (Rec. Doc. 32-12). Shelter withheld 112 documents from production subject to a privilege log, which identified the documents as "claim file notes from Shelter's adjuster(s) prior to litigation" and "documents regarding Shelter's third-party liability investigation and claim handling." (Rec. Doc. 32-13). During the telephone hearing, Shelter's counsel advised that, following recent supplemental productions, the number of withheld documents is approximately fifty. In opposition to Plaintiffs' motion, Shelter provided an updated privilege log identifying the dates of the documents, author/recipients, substance ("claim notes"), and identifying the items as privileged work product. (Rec. Doc. 37, p. 6). Shelter

specifically objected to producing its claims manual, policies, and procedures, adjusting reports and estimates, training material, and personnel files of the involved adjusters as irrelevant, overly broad, and burdensome. (Rec. Doc. 37, p. 7).

Plaintiffs seek to compel production of the unproduced documents as relevant to their bad faith claims. They have retained Britta Moss as an expert in the field of insurance claim handling procedures and management, bad faith exposure management, insurance industry claims standards and common practices. Ms. Moss submitted a declaration that the withheld documents are critical to her opinion on whether Shelter was in bad faith. (Rec. Doc. 32-14). Because Ms. Moss did not have the information needed to complete her report, Plaintiffs moved to extend their deadline for expert disclosures/reports, which expired on September 25, 2024 (Rec. Doc. 29). The Court granted Plaintiffs a limited extension pending resolution of the motion to compel. By separate order, the Court further extended the deadlines to accommodate the Court's rulings herein.

## I. <u>Waiver of Objections</u>

Plaintiffs first urge the Court to consider Shelter's objections as waived because its objections were generic, boilerplate, and vague, often objecting "to the extent" information was irrelevant, inadmissible, etc. (e.g. Rec. Doc. 32-3, Responses to Requests No. 3 through 12).

F.R.C.P. Rule 26(b) governs the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Objections to written discovery must be specific and with stated reasons. F.R.C.P. Rule 33(b)(4); Rule 34(b)(2)(B). Boilerplate objections are unacceptable. *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.,* 258 F.R.D. 149, 159 (S.D. Tex. 2009); see also *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir.1990).

Plaintiffs urge the Court to find that Shelter waived its objections by asserting general, boilerplate objections. Ordinarily waiver of objections is a consequence of untimely discovery responses. *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). Regardless, the waiver principle is generally not applied to documents withheld on the basis of privilege or immunity. *Peairs v. State Farm Mut. Auto. Ins. Co.*, No. CV 20-652-SDD-RLB, 2021 WL 5830587, at *2 (M.D. La. Dec. 8, 2021), citing *In re U.S.*, *supra*.

While Shelter's responses do include several non-specific boilerplate objections, Shelter timely produced voluminous responsive documents and clarified

in its opposition the specific documents withheld on the basis of privilege and as irrelevant, etc. The Court declines to find that Shelter waived any objections.

## II. Privileged Documents

Shelter objected to producing its claims notes originating after Plaintiffs first provided notice of attorney representation to Shelter on November 12, 2021. Regarding the privilege of work-product, Rule 26 (b)(3)(A) states:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

The protection from disclosure envisioned by Rule 26(b)(3), referred to as the work-product doctrine, "can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum & Chem. Co.,* 214 F.3d 586, 593 (5th Cir. 2000), citing *United States v. El Paso Co.,* 682 F.2d 530, 542 (5th Cir.1982). The party invoking the doctrine has the burden of proof to show that the documents in question were prepared in anticipation of litigation. *Conoco Inc. v. Boh Bros. Const. Co.,* 191 F.R.D. 107, 117 (W.D. La. 1998).

The court's threshold determination is whether the documents sought to be protected were, in fact, prepared in anticipation of litigation or whether they were prepared in the ordinary course of business. *El Paso Co.*, 682 F.2d at 542. Under Fifth Circuit jurisprudence a document is prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.*; *United States v. Davis,* 636 F.2d 1028, 1039 (5th Cir.1981). In determining the primary motivation for the creation of a document, courts look to various factors, including, "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Carroll v. Praxair, Inc.,* No. 2:05CV00307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006), citing *Electronic Data Systems Corporation v. Steingraber,* 2003 WL 21653414, *5 (E.D.Tex.2003), citing *Piatkowski v. Abdon Callais Offshore, LLC,* 2000 WL 1145825, *2 (E.D.La.2000). The involvement of an attorney is not dispositive of the "in anticipation of litigation" issue, but it is a highly relevant factor. *Hercules Liftboat Co. v. Rice,* No. 6:11-CV-02111, 2012 WL 4483557, at *1 (W.D. La. Sept. 26, 2012); *Fieldwood Energy, L.L.C. v. Diamond Servs. Corp.,* No. CIV.A. 14-650, 2015 WL 1415501, at *2 (E.D. La. Mar. 27, 2015).

The attorney-client privilege also protects certain documents from disclosure:

> The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26. For a communication to be protected under the privilege, the proponent must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. Determining the applicability of the privilege is a "highly fact-specific" inquiry, and the party asserting the privilege bears the burden of proof. Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions. Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (cleaned up).

A division of this Court previously recognized that an insurance adjuster's claims file is not automatically shielded by the work-product doctrine, but, rather, may constitute information prepared in the ordinary course of the insurance adjusting business:

> Numerous courts have noted the difficulty of determining the scope of work product privilege as it applies to insurance claims files or records from an insurer's investigation of an insured's claim. Because an insurer's business is to investigate claims that may or may not result in litigation, application of the work product privilege to insurance claims investigations has been frequently litigated. Courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies. Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection.

*Douga v. D & Boat Rentals, Inc.*, No. CIV A 04-1642, 2007 WL 1428678, at *4 (W.D. La. May 10, 2007) (cleaned up).

Based on the foregoing, courts routinely find claims adjuster notes are subject to disclosure absent specific evidence that the notes were specifically to aid in future litigation. See e.g. *Hunter v. GEICO Gen. Ins. Co.*, No. CV 17-05070, 2018 WL 4352823, at *16 (E.D. La. Sept. 12, 2018); *Blackmon v. Bracken Constr. Co., Inc.*, No. CV 18-142-BAJ-SDJ, 2020 WL 6731113, at *17 (M.D. La. Nov. 16, 2020); *Clean Pro Carpet & Upholstery, Inc. v. Upper Pontalba of Old Metairie Condo. Ass'n, Inc.*, No. CV 20-1550, 2020 WL 7229700, at *3 (E.D. La. Dec. 8, 2020).

The Court finds that in camera inspection of the withheld claims notes is warranted. Shelter shall provide the documents withheld on the basis of privilege by October 4, 2024. The Court shall issue a subsequent ruling following its review.

### III. <u>Other Documents</u>

Shelter objects to producing the following documents as vague, ambiguous, irrelevant, overly broad, and unduly burdensome:

- *Requests No. 7 and 9: Claims manual and/or written procedures and policies pertaining to the handling of Louisiana personal injury claims; manuals and training materials applicable to claims handling personnel.*

The Court agrees that Shelter's claims manual, policies, and procedure regarding handling of claims similar to Plaintiffs' claims are relevant to Plaintiffs' bad faith claims. See e.g. *Weimar v. Liberty Mut. Ins. Co.,* No. CV 17-584-BAJ-RLB, 2018 WL 6070344, at *3 (M.D. La. Nov. 20, 2018); *Stone v. Amador*, No. CV 20-16-BAJ-RLB, 2020 WL 6292819, at *10 (M.D. La. Oct. 27, 2020); *Beck v.*

*Allstate Vehicle & Prop. Ins. Co.,* No. 3:16-CV-3244-D-BK, 2017 WL 11496870, at *3 (N.D. Tex. Sept. 25, 2017). Regarding training manuals, see e.g. *King v. Americas Ins. Co.,* No. 15-4451, 2016 WL 2610016, at *3 (E.D. La. May 5, 2016) (ordering production of adjuster training policies as relevant in a bad faith case).

The Court will limit the documents required to be produced to any documents which establish the procedures for adjusting claims under policies similar to the one at issue in this action that were in effect and available to Shelter's employees at the time Plaintiffs' claim was adjusted. The Court acknowledges that such documents are proprietary in nature. Shelter may require Plaintiffs to enter a joint confidentiality agreement or protective order prior to production of its confidential documents.

Shelter further maintains this request is impractical because its claim-handling policies and procedures are not located in a single location; however, the Court is not persuaded that separate locations is a viable defense to production in the modern era of technology. Voluminous data can be stored, labeled, located, and produced with minimal effort. Otherwise, Shelter has produced no evidence of the burden it would bear to produce this information.

- *Request No. 8: Adjusting reports and estimates pertaining to Plaintiffs' claims.*

The Court agrees that these documents are also relevant to Plaintiffs' bad faith claims; however, the Court is concerned that such documents may contain privileged

information. Any documents responsive to this request which have not already been produced shall be provided for in camera inspection.

- *Request No. 11: Personnel files, limited to disciplinary actions or negative reviews associated with claims handling and/or performance, for past five years of adjusters who handled Plaintiffs' claims.*

The Court agrees that this information is relevant; however, given the legitimate privacy interests of the adjuster(s), the production must be limited. See e.g. *Est. of Haeuser v. Westchester Surplus Lines Ins. Co.,* No. CIV.A. 13-5631, 2015 WL 403632, at *1 (E.D. La. Jan. 29, 2015), citing cases ("Courts routinely conclude that the personnel file of the claims adjuster who adjusted the disputed claim is relevant."); *Beck v. Allstate Vehicle and Prop. Ins. Co.*, No. 3:16-CV-3244-D-BK, 2017 WL 11496870, at *2 (N.D. Tex. Sept. 25, 2017) (permitting discovery of background, education and claims-handling training/job performance of the adjusters who specifically assessed plaintiff's claim as relevant to whether the adjuster improperly assessed the plaintiff's claim). Shelter shall produce personnel files limited to disciplinary actions or negative reviews pertaining to claims handling for in camera inspection to ensure personal information is not produced.

Production of the applicable personnel files shall be limited as follows: (i) subject to a confidentiality agreement or protective order which mandates that the information shall not be shared with anyone who does not have a legitimate need to know the information on account of their involvement in this case; (ii) documents

shall be related to the adjuster's background, qualifications, training, job performance, and the handling of the specific claims at issue in this lawsuit; and (iii) no personal matters not related to claim handling shall be provided *(*e.g. social security numbers, telephone numbers, drug test results, information relating to the employee's family or financial situation, and protected health information).

- *Requests No. 5; 6; 10; 12*

Shelter acknowledged that all documentation responsive to these requests are contained in the claims file materials previously produced. The only documents withheld on the grounds of privilege shall be provided to the Court for inspection by October 4, 2024. Accordingly,

IT IS ORDERED that Plaintiffs' Motion to Compel Discovery Responses (Rec. Doc. 32) is GRANTED IN PART AND DENIED IN PART, as set forth herein. Considering Shelter's good faith efforts to respond to discovery, including its voluminous production of documents and legitimate arguments in support of non-production, Plaintiffs' request for costs and attorneys' fees is DENIED.

IT IS FURTHER ORDERED that Shelter shall provide supplemental discovery responses with the documents ordered to be produced herein and any documents ordered to be produced following the Court's review of withheld documents by October 9, 2024.

Signed at Lafayette, Louisiana on this 2nd day of October, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE